IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY CARNELL STARR | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-09-CV-1211-O-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Rickey Carnell Starr, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A Dallas County jury convicted petitioner of murder in connection with the shooting death of Samuel Stevenson. After a punishment hearing, the trial court sentenced petitioner to life imprisonment. His conviction and sentence were affirmed on direct appeal. *Starr v. State*, No. 05-04-00031-CR, 2005 WL 148794 (Tex. App. -- Dallas, Jan. 25, 2005, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Starr*, WR-72,091-01 (Tex. Crim. App. Jun. 10, 2009). Petitioner then filed this action in federal district court.

II.

In three grounds for relief, petitioner contends that: (1) he received ineffective assistance of counsel at trial; (2) his conviction was the result of prosecutorial misconduct; and (3) he received

ineffective assistance of counsel on appeal. Petitioner also claims that the cumulative effect of these errors deprived him of a fair trial.

A.

Petitioner cites four instances where he received ineffective assistance of counsel at trial. As best the court understands these claims, petitioner appears to contend that his attorney: (1) was unprepared for trial and failed to call two witnesses to testify on his behalf; (2) did not object to the admission of hearsay statements made by a non-testifying witness in violation of his Sixth Amendment right to confrontation; (3) allowed the prosecutor to elicit prejudicial testimony from the victim's wife; and (4) did not object to the prosecutor's improper jury argument.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *appeal filed*, Sept. 8, 2009 (No. 09-70024). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 774, 79 USLW 4030 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d

230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

2.

Petitioner generally criticizes his attorney for failing to obtain and review certain documents, for not meeting with petitioner frequently enough to prepare a defense, and for not calling two witnesses to testify on his behalf.

The court initially observes that petitioner has failed to identify what documents, if any, counsel should have reviewed. Nor does he explain how any of the missing documents were relevant to his defense. Rather, it appears that petitioner believes his attorney was not prepared for trial because he asked the prosecutor at the conclusion of voir dire, "Is there anything that I'm entitled to on cross that I don't have?" (*See* SF-II at 172). That inquiry was merely a follow-up to a discovery motion filed by counsel in which he asked the prosecutor to produce a variety of materials relating to the case, including information that could be used to impeach witnesses on cross-examination. (*See* St. App. Tr. at 14-21). Nothing in the record suggests that counsel was ineffective for failing to obtain relevant documents.

Petitioner further alleges that counsel met with him only once at the Dallas County Jail and did not "seek out" two potential witnesses -- Billy Handley and Tamika Jones. These allegations were addressed by petitioner's attorney, Fred Tinsley, in a sworn affidavit submitted to the state habeas court. According to Tinsley:

> I met with Applicant at least four (4) times prior to trial and also arranged for private investigator Bill Hunt to visit with Applicant. In addition to conferences concerning discovery with the Dallas District Attorney's office and with Applicant, at my direction, Mr. Hunt logged approximately 36 hours interviewing witnesses and potential witnesses. I was totally prepared to try Applicant's murder case as is evident in the trial record.
>
> Applicant appears to complain that I did not seek out fact witnesses such as Billy Handley and Tamika Jones. During investigation of the facts and before trial, it was determined that Billy Handley was an eyewitness and would have testified adverse to Applicant's interests. Tamika Jones revealed that she was a friend of eyewitness Lavonda Simmons, who testified at trial and that she had dated Applicant. She would also have testified adverse to Applicant's interests.

*Ex parte Starr*, WR-72,091-01, Tr. at 93-94. The state court determined that Tinsley was a "credible witness" and that his testimony was "worthy of belief." *Id.*, Tr. at 84, ¶ 8. With regard to Tinsley's decision not to call Handley and Jones as witnesses, the state habeas court found that:

> [A]pplicant has failed to present any evidence to this court that Handley or Jones would have provided any exculpatory evidence had they been called. The Court finds that the fact that Handley could not pick appellant's photo out of a photo lineup two weeks after the offense does not necessarily mean that Handley could not have identified applicant in a live lineup or in court as the shooter in this murder, and the Court notes that Handley's statement to the investigating officers that he believed he could identify applicant in person contradicts appellant's claim. The Court finds that Mr. Tinsley's statement in his affidavit that Handley would have testified adversely to applicant supports the conclusion that Mr. Tinsley was exercising a reasonable and competent trial strategy in refraining from calling Handley at trial.
>
> The Court further finds that Mr. Tinsley's decision not to call Tamika Jones was part of an objectively reasonable trial strategy, since his investigation indicated that Jones was a friend of prosecution witness Simmons and that she would have testified adversely to applicant. In addition, the information produced by applicant in support of his claim merely shows that Jones was not a witness to the offense, that she could not exculpate applicant or provide him with an alibi, and that she could not have significantly impeached any State's witness.

*Id.* at 85-86, ¶¶ 10-11. Petitioner has failed to offer any evidence, much less clear and convincing evidence, to rebut the finding that Tinsley's decision not to call Handley and Jones was part of an objectively reasonable trial strategy.

In addition, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* Here, there is no evidence that Handley and Jones were available to testify at trial and would have done so. As the state habeas court observed, the testimony of both witnesses would not necessarily have been favorable to petitioner and may have been harmful to the defense. Consequently, petitioner is not entitled to habeas relief. *See Mumphrey v. Thaler*, No. 3-09-CV-1816-N, 2010 WL 1233541 at *4 (N.D. Tex. Feb. 19, 2010), *rec. adopted*, 2010 WL 1233545 (N.D. Tex. Mar. 29, 2010), *COA denied*, No. 10-10380 (5th Cir. Sept. 15, 2010), *cert. denied*, No. 10-8000, 2011 WL 589202 (U.S. Feb. 22, 2011).

3.

Next, petitioner contends that he received ineffective assistance of counsel because his attorney did not object to the admission of hearsay statements made by a non-testifying witness in violation of his Sixth Amendment right to confrontation as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[1] As part of his

---

[1] In *Crawford*, the Supreme Court held that under the confrontation clause, "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 124 S.Ct. at 1369.

defense strategy, counsel attempted to show that Glenn Baccus, a known drug dealer who was present at the time of the shooting, may have killed Samuel Stevenson. (*See* SF-III at 88-101). During his examination of Dallas Police Detective Robert Quirk, counsel inquired if the police interviewed Baccus about the murder. (*Id.* at 210). Quirk said that he talked to Baccus when narcotics officers executed a search warrant at his apartment. (*Id.* at 212). Counsel then asked Quirk what Baccus told him about being at the apartment complex where the murder occurred:

> Q. He tells you, he gives you a story about being in Apartment Number 108, doesn't he?
>
> A. Yes, he does.
>
> Q. And he puts everything on Starr, doesn't he?
>
> A. Yes.
>
> Q. And he takes everything off himself, doesn't he?
>
> A. He gives me his version.
>
> Q. And he cannot be found now, can he?
>
> A. I don't know where he is today, sir.
>
> Q. Okay. But he doesn't get charged at all concerning what happened on the date of the offense?
>
> A. Correct.

(*Id.* at 213-14). On cross-examination, the prosecutor asked Quirk if Baccus gave him a statement that confirmed what other witnesses said -- "that Ricky Starr was the one with the gun?" (*Id.* at 217). Quirk responded, "Yes." (*Id.*). In his affidavit, Tinsley explained that "it was imperative to cast Baccus as the murderer since he was present where the murder occurred." *Ex parte Starr*, WR-72,091-01, Tr. at 94. Based on this explanation, the state habeas court found that:

> [D]efense counsel employed a reasonable trial strategy to cast Baccus as the real shooter in his absence, and defense counsel effectively used portions of police interactions with Baccus to show that Baccus was a suspected drug dealer who had a motive to falsely implicate applicant in this offense in order to help his own position with police. Counsel's reasonable strategic use of Baccus's statements opened the door to use of other portions of his statements by the State under Tex. R. Evid. 107, which would have rendered any objection futile.

*Id.*, Tr. at 86, ¶ 12.[2]

The *Strickland* standard is highly deferential to strategic choices made by trial counsel. "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1417 (2004), *quoting Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). A conscious and informed decision on trial tactics cannot form the basis of an ineffective assistance of counsel claim "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* at 753, *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir.), *cert. denied*, 123 S.Ct. 549 (2002). Here, petitioner has not shown that the strategy employed by defense counsel was in any way deficient. Given the testimony of Lavonda Simmons, who witnessed the shooting and positively identified petitioner as the person who fired the gun, counsel's attempt to shift the blame to Baccus was sound trial strategy. Having asked Quirk about his interactions with Baccus, there was no basis for counsel to object to other statements Baccus gave to the police.

---

[2] The state habeas court also determined that counsel was not ineffective for failing to object to Baccus's out-of-court statements because *Crawford* was not decided until three months after petitioner's trial. *Ex parte Starr*, WR-72,091-01, Tr. at 86, ¶ 12 ("Trial counsel cannot be found ineffective for failing to make an objection based upon an appellate opinion which did not exist at the time of trial especially where -- as here -- the subsequent decision fundamentally changed the law.").

4.

Similarly, counsel was not ineffective for failing to object to the testimony of Amelia Stevenson, the victim's wife. At trial, Amelia testified that she met her husband when he was 16 years old, that they married in 1996, and that they had three children together. (*See* SF-III at 193-94). Amelia said that her husband's funeral was on September 23, 2002 -- one day before their youngest child's birthday. (*Id.* at 194-95). After asking Amelia to identify several family members in the courtroom, the prosecutor showed her a single photograph of her husband. (*Id.* at 195-96). Amelia identified the photograph, and it was admitted into evidence without objection. (*Id.* at 196). No further testimony was elicited from the witness. On state habeas review, the court found that the bulk of Amelia's testimony was admissible to identify the victim, and that counsel "wisely refrained from objecting to the small portion of [her] testimony which might have been unnecessary or which might have bordered on victim impact[.]" *Ex parte Starr*, WR-72,091-01, Tr. at 87, ¶ 13. Petitioner offers nothing, other than his conclusory assertion that Amelia's testimony was "more prejudicial than probative[,]" (*see* Hab. Pet. at A-4), to rebut the state court findings.

5.

Petitioner further contends that his attorney should have objected to several improper jury arguments made by the prosecutor. On rebuttal, the prosecutor told the jury that:

- Chamira Brown, a defense witness, committed perjury by providing a false alibi for petitioner, (*see* SF-IV at 97);

- Veronica High, petitioner's cousin, testified truthfully that Brown asked her to provide the same false alibi, (*see id.* at 98-99);

- defense counsel suggested that petitioner did not "act alone," (*see id.* at 100); and

- Quirk's investigation revealed that "there was not one person who identified anybody else other than Ricky Starr as the person who pulled the trigger[,]" (*see id.* at 101).

The state habeas court found that each argument was an accurate summary of the evidence or a reasonable deduction therefrom. *See Ex Parte Starr*, WR-72,091-01, Tr. at 87, ¶ 14. Like his other claims of ineffective assistance of counsel, petitioner offers nothing of substance to rebut the state court findings. This ground for relief should be overruled.

B.

In a separate ground for relief, petitioner recasts his improper jury argument claim as one for prosecutorial misconduct. Respondent counters that this claim is procedurally barred from federal habeas review.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *See Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 261-62, 109 S.Ct 1038, 1042-43, 103 L.Ed.2d 308 (1989); *Smith v. Collins*, 977 F.2d 951, 955 (5th Cir. 1992), *cert. denied*, 114 S.Ct. 97 (1993). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999). Under Texas law, claims that could have been raised on direct appeal, but are presented for the first time on state collateral review, are procedurally defaulted. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review." *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 2059 (2006), *quoting Busby*, 359 F.3d at 719.

The state habeas court rejected petitioner's claim of prosecutorial misconduct because, *inter alia*, the factual basis of the claim was known at the time of trial and could have been raised on direct appeal. *See Ex parte Starr*, WR-72,091-01, Tr. at 88, ¶ 18. Although a federal court may consider a procedurally defaulted claim if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice[,]" *see Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), petitioner makes no attempt to satisfy these requirements. As a result, his claim of prosecutorial misconduct is procedurally barred from federal habeas review.[3]

C.

Petitioner alleges that he received ineffective assistance of counsel on appeal because his lawyer did not investigate and raise the claims presented in his federal writ of habeas corpus. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle*, 343 F.3d at 445; *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law,

---

[3] Even if this claim was not procedurally barred, it is without merit. The court has already determined that each of the challenged jury arguments were either accurate summaries of the evidence or reasonable deductions therefrom.

or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Appellate counsel raised a single non-frivolous issue in a well-researched brief -- that the evidence was factually insufficient to support petitioner's conviction. Although counsel did not argue that petitioner received ineffective assistance of counsel at trial or that his conviction was the result of prosecutorial misconduct, petitioner has failed to show that his conviction would have been reversed had those claims been raised on direct appeal. *See Maki v. Dretke*, No. 3-03-CV-0011-D, 2004 WL 719146 at *8 (N.D. Tex. Apr. 1, 2004), *rec. adopted*, 2004 WL 1170476 (N.D. Tex. May 25, 2004). In fact, this court has determined that trial counsel was not ineffective and that there was nothing improper about the prosecutor's jury argument. *See Jackson v. Quarterman*, No. 3-06-CV-0494-G, 2008 WL 58879 at *10 (N.D. Tex. Jan. 3, 2008), *aff'd*, 358 Fed. Appx. 585, 2009 WL 5102867 (5th Cir. Dec. 23, 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected by federal habeas court). This ground for relief should be overruled.

D.

Finally, petitioner contends that "the cumulative effect" of these errors resulted in his conviction and life sentence. This argument implicates the cumulative error doctrine, which provides that "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 887 (1999). Here, petitioner has failed to establish that the performance of his attorney was deficient in any way or that he was prejudiced thereby. As a result, relief is not available under the cumulative error doctrine. *See Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir.), *cert. denied*, 121 S.Ct. 122

(2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 10, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE